Thank you, Your Honors. May it please the Court, Mary Ann Dugan for the appellants, Mr. Yergler and Mr. Hollows in this matter. My name is Mary Ann Dugan. I would like to reserve five minutes for rebuttal. Very well. As you know, this case is, this appeal is almost entirely regarding standing. There is a side issue of leave to amend, which I think doesn't even come into play unless certain factors are addressed. But the lower court presented or applied a very difficult or maybe even impossible standing test, which was not rooted in the relevant case law. At ER 52, the district court held that to demonstrate standing in this pre-enforcement facial challenge to a new, not new, but to the park rules in Eugene, the plaintiffs would have to set forth in detail what they intend to do, where they intend to do it on city-controlled property, when it will occur, and how. That is not the test for this type of appeal. As this court held in Arizona Right to Life, constitutional challenges based on the First Amendment present unique standing considerations, as we addressed in our opening brief at 19. And in that case, the court went on to say, citing another Ninth Circuit case, when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically towards a finding of standing. And that's in part because as pre-enforcement challengers to bringing a facial challenge to the rule, the plaintiffs are also standing up for the rights of people who are not before the court, whose First Amendment speech may be chilled. These two happen to be people of more than ordinary firmness, so they may themselves not be chilled, but others may. So let me just jump in here because, so we've got the two individuals, and I want to focus on Mr. Yurgler. Sure. Because I think that's your best case. Sure. So when we look at his declaration, and in the complaint, it has the same language. I'm looking at his declaration, and it's ER 38 is what I'm looking at. So take a second, I see you've got things well marked there. So let me know when you're there. Yes. Okay. So paragraph three on page, on ER 38, he says, I am at risk of future enforcement action due to my expressive conduct. I intend to continue speaking out in public spaces against the city's policies. So this is where I have the concern in this case. It's literally what, we got to go with what the words are, is that my understanding is that Mr. Yurgler is contesting the laws that govern the parks. And I know the laws govern more than just the parks. I'll call it the park law. Here he says, I intend to continue speaking out in public spaces. Public spaces is more than just parks. That could be a library, could be a street corner. Where does he say that he will continue speaking out in a park? Well, your honor, as you know from the record, the enforcement against him was in a park. Sure. I will also point out that the definition of the Let me find that in the record. I guess what I'm trying to say is that, why didn't he just say, I will continue speaking out in parks? Well, parks are a subset of the public spaces in Eugene. Right, but that, but see therein lies the problem. Because the problem I see, if I spoke out in Louisiana, and Louisiana had a very odd law, and then in the next time I said, I'm going to speak in the United States, Louisiana is a subset of the United States, but that doesn't mean I'm going to speak out in Louisiana. And I'm just trying to see here that it seems to me this case is very different if this sentence said, speaking in public parks. But it doesn't say that. Well, so on page three of our opening brief, the first sentence in the fax explains that the city of Eugene owns and or controls 5,000 acres of parks, facilities, and open space. That is the public space in Eugene. And that's the area from which Mr. Yurgler and Mr. Hollows were excluded for 30 days from all property owned and governed or controlled by the city of Eugene. No, I agree everything you're saying here. I guess what I'm saying is that the public spaces in this city are more than just the parks, right? Correct. So the one is a smaller of the other. I guess I'm just trying to understand because you drafted this declaration, correct? I helped him draft it. Yeah. I mean, your name's on it. Lawyers do that. That's what you're supposed to do. I'm just trying to figure out why didn't it just say parks? It seems to me this case is completely different if the word parks was in there. I assume you would say, well, we can go back and amend that and add parks. Well, that's an interesting issue that was not raised. I definitely would have asked for leave to amend. I think the confusion lies in the fact that when we drafted the complaint and then the declaration, our research indicated as is laid out on page three, and there's a site to the city of Eugene's website, all public space in Eugene other than the federal courthouse is included in these park rules. Like a street corner would be? Well, that can't be right. A street corner is not a park. When Mr. Yurgler was excluded, he was not told you can use the sidewalks, you can use the streets. He was told to stay out of all city controlled and owned property. And that is the area that is covered by the parks rule. And that is the public space. Right. But I mean, I don't think the city's ever contended. And I'll ask them. They're going to get the business too. Don't I'm trying to understand that. Has the city ever contended that this park law controlled like a library or a town hall meeting or a sidewalk? Well, the exclusion order certainly does not distinguish between any of those spaces. In fact, below that was one of our arguments that these people are excluded from all public space, arguably the sidewalks. There was no factual rebuttal presented to that because it's not clear in the policies. So it's your contention then, just so I clear, this is important to me. Your contention is that the line public spaces in the declaration in the complaint necessarily covers everywhere in Eugene because the law would apply everywhere in Eugene. Is that the that's the step? Yes, I think that's certainly the logical conclusion from being told you are excluded from all public space after you speak out in a public space that happens to be a park. And then those areas are governed, 5,000 acres governed by these park rules. So to call it a park rule maybe is is the is the confusing part is that it's not just parks. It does say facilities, which clearly would include the library, city hall, open space. Can I ask about that? I understand that this discussion you've been having is the old rules, the rules that were applied to him. Yes, and the amendments did not change, for example, the definition of what areas covered. They don't? I thought I thought they changed it to say using, you know, they got rid of engaging in any activity or conduct that's disruptive or incompatible that interferes with enjoyment of a park, open space or park facility, which is and replace that with using playground equipment, sports courts, picnic tables and picnic shelters. There's two different rules that are at issue. I mean, there's three rules, but the third rule is the exclusion rule. So the. Sorry, just wanted to find the part about the change in the rules. So the rules that were changed. The exclusion rule was changed. That's not what you're asking about. Rule 1.010 was changed to address city events. And then it was changed from like I don't I'm not sure that the word park is even in in there now. Right. It says city event or an event for which the city has issued a special event permit. But it's within the entire body of the rules which say at the Right. But I mean, and I don't know what this what the and this was one of the struggles I'm having with this case is I don't know what the city's interpretation is now, but because it uses before it used park, open space area or park facility, which I which sounds capacious, like that couldn't it would fit your idea that it would include almost everything. Now it says playground equipment, sports courts, picnic tables and picnic shelters. That sounds a lot more narrow. So to read that list of things as including street corners seems a little harder than it would be under the old rule. And the reason I'm asking I guess I'm not and we can ask we can ask the city what they think of that, how they're interpreting this. But one of the struggles I'm having is, you know, Judge Owens was asking you about, you know, what he hasn't said he's necessarily wants to do something in a park. But he has said he wants to do something in a, you know, more broadly than that. But we don't know if it's in a park. Normally, I think we would we would say, yeah, but he was arrested in the past. Or, you know, he got cited in the past for in a park. I think it was in a park. And so so that's some evidence that he will, you know, we typically make sense. It's common sense that that you would take that as evidence that that could happen again. The problem for me is that the rule has changed and it's changed. I think the language is is not it's not like it's clear to me that this language covers the same thing. So what I'm struggling with is it does seem to me to make sense that he that your clients should clients should have the ability to explain why they would violate these new rules. And it seems to me that the fact that they violated the old rule is not necessarily indicative that they would violate the new rules. I'm just why wouldn't we? And I don't know what the path to get there. I don't know if we find the old rule issue moot or if we find that they don't have standing to do the old. But the problem to me seems that you should have a chance to amend. But but is that would that satisfy you to have it to be able to go back and have a chance to amend and have a new declaration? Well, first of all, I just I'm I respectfully on page five of the opening brief, it sets out the old rule. One of the old rules, both of them, but subsection 16 did say at the time, including but not limited to using playground equipment, picnic tables or picnic shelters for reasons other than their intended use. That is not the language that changed. The language that changed was they took out some of the interfering with reasonable use and enjoyment, but they left the disruptive or incompatible. So I'm the reason I'm hesitating is I don't recall this ever being briefed as the change you're talking about is not familiar to me. Nobody thinks that the that the change that I'm talking, the changes I'm talking about. Make a difference in the case. I don't think what you're saying changed is correct. I think you don't think they changed. I read a provision of the rule as amended that says engaging in any activity or conduct which disturbs a city event or an event for which the city has issued a special event permit. And I do not see any geographical limitation to that. That is subsection 17, I believe, not 16. Okay. But that is also one of the challenged rules. Yes. So because Mr. Yurgler was first charged with a violation of subsection 16 and then they later changed it to 17, there's a lot of confusion in these rules. They're very vague. They're overbroad. We would like to get to the merits of that. But in the meantime, I don't think that the changes in the rules are what Judge Van Dyke said. Maybe I'm misremembering, but I'm trying to find the actual change, but it's not, I don't think it's that. It seems to me that if you were to amend and with a amended declaration, you could very clearly indicate, and maybe not as to when this is going to happen, but if he intends to protest at park events and he intends to protest whatever the ambiguity that currently exists, it seems to me with an amended complaint and an amended declaration, all of these questions go away. That's correct, Judge. And then this is a much simpler, I mean, for you, this is a much simpler case. Don't worry, I'm gonna give you more time. Don't worry about the clock. Yeah. But it seems to me, I mean, are we wrong about that? Well, I agree with you. I also, this was not raised below and therefore, it's not what the district court based its decision on. Right. But unfortunately, when it comes to Article III standing, we've got to hash this out now. That's the problem. Well, correct. But the factual record was not what I'm being questioned on. And that's why it's a little bit difficult. But I think that's all the more reason why you'd want to amend. We do. You know, we keep kind of add to that. What I'm struggling with is two things. What Judge Owens asked about is, have you even, has your client actually said he wants to do this again? And what you have in response to that, I think your strongest thing is, yeah, but he got arrested one time or I don't know if it's arrested, but he got in trouble. But the problem is he got in trouble under an old rule. So I'm not sure how, I don't even know if we have cases to talk about if the rules change. And I'm not even clear how the rules change. And I certainly am not clear how you think any changes to the rule affect, you know, have changed or affect. And so part of me just thinks, boy, that could all be made, those two things could be made a lot more clear in this case. Because right now I feel like I'm shooting in the dark on a lot of questions in this case. And some of those questions go to standing. That's understandable. You know, we do address the changes in the rules at 28 to 30 of our opening brief and in the reply at 8 to 10. The main changes were to limit, purported to limit the length of time that somebody could be excluded, but it then gave this huge loophole to give discretion to the officer to extend that time. It also limited the scope of the restriction of use to a specific park or open space or facility where the conduct occurred, unless the officer believes that a broader application is required. And then the disturbing a city event, number 17, was amended. Let me just make, so right now, I don't know exactly what it is your client wants, precisely which client, like your client wants to go to a certain type of event and wants to stand there and fire off confetti. I don't know what exactly he wants to do. It's very general what you've said that he wants to do. The only thing that's helpful is what he has done once in the past, right? In theory, that would go, well, presumably he'll do something like what he did in the past. But I also, I don't know if the city, and maybe the city could tell us, I don't know if the city's view is that what he did in the past would be disallowed by the current rules. So it just feels to me like it would help a lot more in evaluating your First Amendment claims if I knew what your client wanted to do, had a more specific declaration, and if I knew, if the argument was actually joined as to, you know, if the city says, yeah, your client says he wants to do X, and over our dead body, he's going to do X, then we could say, okay, does that violate the First Amendment? And that would be helpful. But right now, everything still feels kind of vague, both in what precisely your client wants to do and whether or not the city even thinks that would violate their rules. I think some of that goes to the vagueness problem because Mr. Yurgler and Mr. Hollows went out. Vagueness that helps you and there's vagueness that does not help you. And vagueness as to what your client wants to do does not help you, I don't think. Well, I think in a facial challenge to a law, it does. Because how are you supposed to show that you are going to do something that will then attract the enforcement of a law when the law is so vague you don't know what the behavior is? I think to jump in, we agree that if the law is vague, that helps you. If it's vague as to what your client's going to do, that doesn't help you. Well, maybe I'm not articulating this well. So it's almost impossible with a vague law to say what things you will do that will get you in trouble. But he could have said, I'm going to do the same thing I did last time. Counsel, I'll give you an example. In our case, Porter, which involved a challenge to a state law that prohibited honking, which was applied to expressive honking in response to a protest. The plaintiff was cited for violating that law when she honked in response to a protest. There's a declaration saying, I would do the same thing again. If I passed a similar protest, I would honk or I would not honk out of fear for this law. There's some, even though she can't specify exactly when she's going to run and drive past another protest, nobody's asking for her to predict the future. But she's saying, if this, then that, with some to the specificity required. In this case, I think what would be helpful is to have more specific descriptions of what your clients did in the past and what they would do under similar circumstances in the future, in a park, if there was a city event. Or we understand this to apply to all City of Eugene open spaces, which is defined as blah, blah, blah. And if the city did A or B or C, I would want to do X, Y, or Z. But I, I'm afraid I would be cited again or excluded from all city park spaces like I was the last time. And the changes to the rule don't help me understand that that would not violate the city law. But we have very bare bones declaration, which is vague. Right. Well, honking. We're not asking you to predict that the police would, what the police would do, but to predict what your, your clients need to predict what they would do and when. Well, okay. So honking is an extremely specific thing. And you can obviously specifically say, I'm going to continue honking when, you know, the things these two people were arrested for were speech. It was above a certain decibel. No, there's no limit decibel limit. It's just, somebody says you, your speech just disturbed. But have you, I mean, you haven't really even said, I plan to do the same thing again. The one dude's moved away, you know, like, is he going to like, I'm over and, you know, just say in a declaration, I plan to come over, rent a car with a really loud horn and do some honking, you know, or something. But like, the problem is I would like to ask him really hard questions about, I'd like to ask him really hard questions about, they say they want to do X. Will that violate your VAG statute? And then when he says, no, I want to follow up and say, well, it's super vague. It could be, but I don't, you haven't given me the ammunition to ask him, to ask him those hard questions because I have to make up what I think your clients want to do. Does that make sense? That's our concern. Fair enough. I do, I will say that had this type of debate occurred in the lower court, we would not be here with these kinds of questions because we would have clearly asked to amend to make that clear. That argument was waived. It was not raised below. Can you proffer that if given leave to amend, you would be able, your clients would able to attest with more specificity what they would like to do in the future if there's another city permanent or sponsored event or what, whatever it is, the range, full range. I mean, I don't know if it says your declaration says we believe in a lot of progressive causes. They're activists for the unhoused, right? I mean, can they say if there were another event, if the city official was speaking, if this, if that, you know, can they give an array of examples of things they would like to do in the future, but fear are prohibited. I mean, just run through an array of examples. Even can you proffer that your clients can do that? Oh, certainly. I mean, he's, he's in the, in the media quite a bit. All right. So let's do this then. I'm going to, I'm going to, because we're, we're way over because you've had a lot of questions now. You didn't do anything wrong. Yeah. We're going to give you five minutes for rebuttal like you asked. Now let's hear from the other side. Okay. Thank you, Your Honor. Thank you, Your Honors. Counsel may please the court. Ben Miller for the city of Eugene. You know, we think the district court did correctly determine that neither plaintiff had standing in this case to bring the facial challenge to a now different version of the in their depositions or their declarations and intention to engage in a course of conduct arguably prescribed by the park and open space rules and for which a credible threat of prosecution existed. And that's, it's a really important point I want to emphasize in this case is that this is not here on a motion to dismiss or preliminary injunction. This is a case that went through all the stages of discovery. I deposed the plaintiffs. I deposed them about their intentions. I took discovery from them. We asked them interrogatories that are in the supplement excerpt of records about what other warnings or dangers that they had. So counsel, we have a line in cases that says when the plaintiff has violated the challenge law in the past, particularly in the first amendment context, we don't ask them to allege with specificity exactly how they're going to violate the law in the future because the fact that they violated in the past mitigates the concerns about the hypothetical nature of a pre-enforcement challenge. How does this case differ from this case? Differs in two specific ways. First, because the rules have changed to focus on material different conduct. And second, because the declaration that they have talks about speaking out in in general, it's in public Has the city ever stated for the record disavowed that the new law would that the plaintiff's past conduct, have you ever stated for the record that the plaintiff's past conduct would not violate the new law? Well, what we have stated, and it's in, it's not part of your SCRs, it's part of the docket below. I believe it's in document 27, which is our response to their motion for summary judgment. If you look at there where we're talking about kind of the merits of that, we go through in great detail and talk about the areas where these laws actually apply. And we talk about this issue about what what type of conduct would fall within it. And that's because in Oregon, we we do things a little differently. We look at this under an Oregon Constitution, Article One, Section Eight lens, which really limits even more so than the First Amendment, the ability of a city or any sort of that constitution existed and the First Amendment exception existed in the prior version of the rules, correct? Correct. And yet, there's no dispute that the plaintiffs were arrested, cited, excluded. And there was the criminal charges filed and dropped without explanation, right? Has there ever been an official disavowal that says, this rule did not apply to the plaintiff's conduct? This rule cannot apply to the content of the State v. Rich, State v. Puckett. If the plaintiff engaged in the exact same conduct as they did in the past, would the new rule as amended apply to them or not? If the non-communicative aspects of it, the volume of their speech, not the content and not other people's reaction to that speech, if the volume of it was such that it disturbed it, Oregon constitutional law does allow there to be an enforcement action. So if they engaged in the same exact conduct as they did in the past, it would still be a violation of the rules as amended? The, there's, I want to look at it. Would it? Is it a yes or no question? And I'm trying to, because there's two different actors and they did different things. Okay, so plaintiff Yurgler, if he engaged in the same exact conduct for which he was cited, arrested, and criminally charged, if he engaged in that same exact conduct today, would the new rules, would he be able, could the city cite him and exclude him under the rules as amended? For the volume of his speech only. For the same exact conduct. I understand you would contend it's not a violation of the First Amendment because of the manner in which he gauged. We're putting aside the merits of the First Amendment claim in the city's defense, but the city's position would be if he engaged in the exact same conduct as he did in the past, they could enforce these rules against him and cite him and exclude him. Is that correct? Yes, for the volume. Okay. If I could ask counsel, there is a definition, it's at SCR 10, it's 1.000 park and open space areas covered. Right. I just want to clarify some things. My understanding is that a street corner, as long as it's not a street corner of a park, is not covered by any of the things we're talking about. Is that correct? That's correct. A library is not covered by anything. That's correct. A town hall meeting is not covered, correct? That's correct. A facility is only a facility that's, it says here in the rule, located there on. Right. So if there were a park bench or a ranger tent or something like that, then that would be a facility, I guess, in a park. Correct. Or maybe if there were tennis courts on a park. Or pickleball courts. Pickleball, well, not a fan of pickleball because that makes a lot of noise. That's a whole other case about whether that should be allowed. I have a couple of those. Yeah, I'm sure you do. But the street corner and kind of traditional, the guy in the soapbox yelling about politicians is not covered by any of this. Park rules have no application there. Okay. That's correct. So I can get back to what I think the district court did, which was to apply the tests that apply here in a pre-enforcement case. And I guess I'll, not to get on another tangent, but this is sort of a weird position to be in for a pre-enforcement challenge because you have two provisions that they're challenging, 1.010.16 and 17, that are sort of prohibitions. But then they're trying to bring a pre-enforcement challenge to procedures in 1.005 for issuing a notice of restriction, and then at 1.074 for sort of the appeal process. And I just don't understand how you apply a pre-enforcement First Amendment analysis to those type of procedures because on their face they don't implicate anything. I mean, they could be utilized for somebody who has a dog off leash or for any other park rule violation. So I just want to point out that when we're looking at this pre-enforcement test under Dreyhaus and Thomas, really I think needs to focus on the 1.010.16 and 17 park rule. But there's no dispute, right, that the city in fact issued an exclusion order, right, in response to the plaintiffs? No, there's not. But it's a facial challenge to the procedures, I guess, is what I'm saying, as opposed to saying I'm going to violate something and I want to know ahead of time. And that's where I think your case law usually has a little bit, a lot more substance than what these declarations have. You have things like an opinion letter, you have a litigation hold, you have a notice that there's an investigation, you have other issues that show there's a credible threat of enforcement. Well, in those cases, there has been no past enforcement. This case, there's no dispute, right, that the plaintiffs were arrested, cited, excluded, and criminally charged. Is that correct? That is correct. And was there ever any explanation? I mean, did the city say we're dropping the criminal charges because actually we made a determination that their conduct falls within the First Amendment exception or that they didn't actually violate the rules? There's nothing in your SCRs about that. So why isn't there, I mean, under our case law, when there has been past enforcement, there is a credible threat of future enforcement when it's not been, even if it's been dropped, if it's not been dropped because of a clear determination on the merits? Well, as to Mr. Hollows, I mean, that's, I think, a different scenario. They only need one. So let's focus on Mr. Yerkler. Okay. So that is one element of part of the Thomas test, which is the history of past prosecution or enforcement. But that's only one element of it. The first one is a concrete plan to violate the law. And that's what we don't have from these declarations, where the enforcement authorities have communicated a specific warning or threat to initiate proceedings. We have a series of cases, including Tingley, Porter, other cases where we have said when there has been a past violation, they don't need to allege with specificity a concrete plan. The concrete plan requirement really comes up in the case where there's a brand new law and there's no history of past enforcement. And we really need to understand how exactly is there going to be an arguable violation in the future? But we have a record here. Well, I think that you do have some cases, I think it's Seattle Pacific and maybe even Pace Ranch, that are looking at sort of new laws. And even there, the plaintiffs are providing some level of specificity. And this is where this case, I think, is so unique because the declarations and all the information I got out of them from the depositions, including that Mr. Yurgler is not refraining from using parks because he fears that something's going to happen. That's in his deposition. That the areas that they're saying are covered, where they're wanting to do activities, are areas where we're saying you're free to do that. You're free to speak out against the city at city council meetings, on sidewalks, all the rest of it. Or even free to do that in an event. You just can't, the volume of what you're doing can't disrupt the event as it's interpreted by Oregon constitutional law, including state v. Rich, which talks about that non-communicative element of it. But we are not saying, we're absolutely not saying that we're regulating speech, we're trying to regulate the content of speech, and these laws don't get at that. They also don't get at sort of the scope of the different areas in which either plaintiff could operate. So, as I indicated, the other piece of the park rule that I think that we haven't focused on yet, but we really need to, this is from the 2021 version of it, is 1.005.3e, which is basically the savings clause that says, the city is interpreting this, that nothing shall be construed to authorize the exclusion of any person lawfully exercising free speech rights or other rights protected by the state or federal constitutions. And so we have that overlay with the park rule. I mean, there's a merits challenge, right, where you could argue this is a reasonable time, place, manner exception that you're seeing the plaintiffs would say, but we don't have enough notice, right? I mean, I don't know, is there a decibel specification? There might be all sorts of arguments that both sides can make on the merits of whether this law is sufficiently clear, whether it's a reasonable time, place, manner restriction, which I think is what you're, you would be arguing, right? That's what I understand, but over here we're talking about standing, which is not supposed to be a litigation on the merits, right? It's just a question of whether there's an arguable First Amendment interest that's arguably prescribed. And in a pre-enforcement challenge, right, there just has to be a credible threat. And when there's been absolutely no history of violation or enforcement, we've said merely if the statute could be interpreted as prescribing the intended conduct and there is no disavowal, right, that's enough. Has there been a disavowal of enforcement of these actions against the conduct for which it has been enforced in the past? Yes, for speech, yes. But if they, I mean, I understand you're saying it's only because of the volume, but if they engaged in the same exact conduct in the past, I understand your position to be because of the volume, we would apply the amended rules against them. That's right. And then you can have an argument on the merits about whether that's permissible under the First Amendment, right? But for standing purposes, your view is yes, it would still apply, correct? Yes, but not for content. And the reason I, believe me, I don't want to get into the merits argument, but the reason it matters is because of the second prong of the Dreyhaas test, which says, okay, we look at the code provision and is it the intended future conduct, which we're trying to measure and we kind of can't measure because we don't know what they're saying they're going to do, but is that arguably prescribed by the challenge statute? And so what I'm saying is the challenge statute has a carve-out that says we're not going to use this or apply this in any way for the content of speech. But that carve-out existed under the prior rules that were enforced against the plaintiff's conduct. Yes, and that's because on the merits we contend that we didn't do it for that. On the merits, you're saying that was perfectly fine. But I am saying that on its face, on the face of the rules, 1.0053e under the 2021 rule says you can't do this. You can't apply this in a way that is targeted towards content, and that's based upon all the other case law that we've sort of cited, too. So that's where I think it does come in here because you're still trying to compare the actions they're saying they're intending to take in the declaration or refraining from taking, of which we don't really have any, to the rule that has a limitation on its application and has a geographic limitation and then say, okay, is it arguably prescribed? And then is the threat of future enforcement substantial? Looking at sort of those Thomas factors. And yes, under a different version of the rules and a different scenario, there had been arrests, but the rules have been amended. We have sort of a different scenario here. There's nothing that prevents this. But I understand you're saying if the same conduct occurred, the changes in the rules would not take that conduct outside of the prohibition. It would permit enforcement action for non-communicative elements of speech if it rose to the level. That's your argument about the prior rules, correct? Yes. Okay. If you want to wrap up real quick. Okay, yeah. So just on mootness, we think that the case is moot as of the 2021 rules, and really the best remedy here is to determine, as the district court did, that they didn't have standing, and that the case has been moot as of the 2021 rules. Plaintiffs are entirely free to file in a new case rather than amending. Because we did. We went through discovery. We did all this. Mr. Hollows clearly is, I think, not going to be somebody that's going to have standing going forward. But there's nothing that would prohibit a person with standing from bringing a challenge to the existing 2024 rules and doing it that way. And we think that would be better. So we would ask you to affirm the district court. So thank you very much, counsel. Appreciate it. Thank you, Your Honors. The respondent counsel asserted that the rule cannot apply to content. The rule cannot, under the Oregon Constitution, be applied to content. And of course, also not constitutional to apply it to content under the First Amendment. But it's a circular argument because our point is, when we get to the merits, that this is so vague and overbroad that it allows discretion of the officer to say, oh, you just, your voice just rose to the level of disruption. When, you know, here's some city councilors speaking and, I'm sorry, city managers speaking through a microphone to an applauding crowd. Somebody who's not happy with that raises their voice and is immediately physically extracted from that event and then banned from all public space, all park space. That is entirely up to the discretion of the officer and remains so under the amended rules. Regarding the past enforcement, the O'Shea Supreme Court also noted that that is evidence to support standing. And here we have not only Mr. Yurgler himself, but Mr. Hollows, it is true we only need one for standing, but we now have a pattern of the officers using their discretion to apply the rule to exclude people whose speech they are not happy with. All right, so I'm going to jump in here because you've gotten some hints from all three of us that there may be some light at the end of the tunnel for you in this case. If you can go back and amend with maybe a new declaration or new complaint, you've just heard opposing counsel say that this does not apply to street corners, it does not apply to City Hall, it applies to what is defined in that 1.000. So with your understanding of 1.000, can you, I'm going to follow up on Judge Song's question, can you proffer that you could have an amended complaint that is sworn and that satisfies Rule 11 that your client would intend to engage in conduct that would fall within the definition of parks or whatever we're going to call these things under 1.000? Can you do that? Absolutely, yes. Okay, so it seems to me that that is probably the best case scenario for you from my perspective, because like Judge Van Dyke said, when I read what's been filed, I still don't really know what your client's going to do. I agree with Judge Song that you don't have to have give us like the playbook on exactly what he's going to do, but I have to know if he's playing football, if he's playing basketball or baseball. Like I have to have some concept of what plane field we're on, and you think you can provide more detail on that? Yes, Your Honor. Okay. Can I ask one follow-up on that? Which is, at the very end, I think your counsel on the other side said, yeah, but they don't need to amend the complaint because they can just bring, you know, if they, if we were to affirm, they can just bring in a lawsuit. I think the reason you would probably prefer to amend is that if you eventually could win, maybe you could get attorney's fees all the way. I'm just wondering, I'm trying to think of why, well, maybe you just tell me why is it better to allow you to amend than to just say you lose because we don't think you've got enough facts here, but we're not saying that you couldn't have enough facts. We just don't think you have them in this case. What is the difference between amending and just bringing in a lawsuit? Well, it's not the attorney fees. We are a non-profit organization, and that is not how we make our money. But, you know, I think that to require people... Would you get attorney's, maybe, would you get attorney's fees if you... I was going to say, if you're not a profit, you should be asking for them. Yeah. I did lots of pro bono for non-profit organizations before I, you know, for this job, and they always wanted their attorney's fees when they won. You definitely will if we win, yes. But it seems like, I'm not sure you would actually get your attorney's fees up to this point if you were allowed to amend because the idea would be... It does seem a little unfair that you would get attorney's fees if, for the part where you weren't winning, and then when you amended. Because that's kind of partly on you if you have to amend to have facts. I'm trying to figure out, maybe just tell us, like, why would we... What's better, right? Yeah, yeah, yeah. Amending or filing a new lawsuit, from your perspective. Okay. Well, you know, I wouldn't have appealed if I thought that there wasn't a good reason to do so. And the reason is because of the importance of spontaneous protest, for example, which is set out by the Supreme Court in Shuttlesworth, to require people to articulate how they're going to, what steps they are going to... I think you're about ready to tell us that, no, you don't, you should not... We're not going to redo the case. But if we think you need to, if we think you need more specific allegations, let's assume that for a second, that we think you need to do that. The specific question I've got is, why is it better for you to amend as opposed to just giving the court those more specific allegations in a subsequent fresh lawsuit? I don't like to admit I'm wrong. No, I'm joking. What I was trying to say, and I have... You're over time, so let's get to it. I was trying to. So what I'm trying to say is that the more hurdles that are placed in front of people who want to challenge an unconstitutional vague law, the less likely people are going to do that. And the hurdle that the lower court placed is unreasonable, and it does not meet the standards that were set by the previous courts. If, in the alternative, this court disagrees, which it sounds like you may, we'd gladly take the opportunity to amend, which we were not allowed to do in the first instance. You would prefer that over the chance to file a new lawsuit? I would prefer that to having a loss in the Ninth Circuit that might harm other people. No, but again, the question is, is that there are two roads here. You can either redo this case or do a new case. He is suggesting they should just do a new case. Is he right about that, or is he wrong about that? We could do both. Okay, so right now you're not prepared to say which one you prefer? Starting a new case seems not to be in the interest of judicial efficiency. It would mean... So you'd rather amend? Yeah. I don't think we need new depositions, for example. Gotcha. Okay. Anything further from my colleagues? All right. Thank you very much. This is a very interesting case. This matter is submitted, and again, thanks to everyone in Portland. It's been a great week. Take care. Thank you, Your Honor. All rise.
judges: OWENS, VANDYKE, SUNG